IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ONEAL JOHNSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 23 C 3200 ) |
| BRANDON MCDONALD, JAVIER ROMAN, and CITY OF CHICAGO | ) Judge John J. Tharp, Jr. ) ) |
| Defendants. | ) ) ) |

**ORDER**

For the reasons set forth in the accompanying statement, the defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) [13] is granted. The defendants' motion to dismiss pursuant to 28 U.S.C. § 1915(e)(2)(A) [43] is denied as moot.

**STATEMENT**

Plaintiff Oneal Johnson brings this § 1983 action against the City of Chicago and two members of its police force, officers Brandon McDonald and Javier Roman. The plaintiff alleges that the officers pulled up next to him while he was sitting idly in his parked car, approached with firearms drawn, and proceeded to arrest him in retaliation for filing lawsuits against other officers. His complaint asserts three theories on which relief should be granted: false arrest in violation of the Fourth Amendment, malicious prosecution under Illinois law, and conspiracy to violate civil rights. Compl. 5-7, ECF No. 1.

Johnson alleges that the police attempted to avoid creating a video record of the stop, *id.* at ¶ 16, but both officers were equipped with body cameras that recorded the encounter—and tell a different story. The footage shows the officers approach Johnson's car and ask him to step out of the driver's seat. *See* Defs.' Digital Exs. A & B, ECF No. 18; Defs.' Digital Ex. C, ECF No. 28.[1] As Johnson complied, the video shows a car key in his right hand. Johnson told officers that he was "just getting off work." ECF No. 28. Officer Roman asked where he had come from and Johnson reiterated by providing the location of his employer. *Id.* Meanwhile, officer McDonald ran Johnson's driver's license and discovered that it had been suspended after multiple DUIs. The

---

[1] The parties' briefs have also addressed body-worn camera video from a third officer, Sides, who is not named as a defendant. *See* Pl.'s Resp. to Defs.' Mot. to Dismiss 4, ECF No. 26; Defs.' Reply in Supp. of Mot. to Dismiss 6-7, ECF No. 28.

officers then arrested Johnson for driving on a suspended license. *Id.* At no point did the officers draw weapons.

The defendants contend that the officers' body-camera footage conclusively establishes that they had probable cause to arrest Johnson, effectively foreclosing each of his civil claims. Defs.' Mot. to Dismiss Pl.'s Compl. 4-6, ECF No. 13. Alternatively, the defendants assert that the footage at least shows that the officers reasonably believed that they had probable cause, which is sufficient to exempt them from liability under the doctrine of qualified immunity. *Id.* at 7-9. On either ground, the defendants maintain that dismissal is warranted under Federal Rule of Civil Procedure 12(b)(6).

To survive a 12(b)(6) dismissal, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). In other words, the complaint must contain factual allegations that "plausibly suggest that the plaintiff has a right to relief" that rises "above a 'speculative level.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). When evaluating whether a plaintiff has met that standard, the Court accepts all well-pleaded factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Id.* Pro se complaints are construed liberally in favor of the plaintiff. *Balle v. Kennedy*, 73 F. 4th 545, 557 (7th Cir. 2023).

As a general matter, courts will not consider evidence outside the pleadings without first converting a motion to dismiss into one for summary judgment. *Hyung Seok Koh v. Graf*, No. 11-CV-02605, 2013 WL 5348326, at *8 (N.D. Ill. Sept. 24, 2013) (citing *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002). An exception to that rule, however, applies to facts in the public record that are "not subject to reasonable dispute" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). The Court retains discretion to take judicial notice of such facts on its own accord, even at the pleadings stage. *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997).

When, as here, the accuracy of police camera footage has not been challenged and the footage "utterly discredit[s]" a plaintiff's account, "courts are not required to afford customary deference to the non-movant's averments." *Luczynski v. Joroan*, No. 23-cv-17184, 2024 WL 3106101, at *2 (N.D. Ill. June 24, 2024) (quoting *Scott v. Harris*, 550 U.S. 372, 380-81 (2007)); *see also Williams v. Brooks*, 809 F.3d 936, 942 (7th Cir. 2016) (considering video evidence that "blatantly contradicted" a plaintiff's allegations). Instead, the Court may take judicial notice of the video when assessing whether the plaintiff has pleaded the factual predicates of a viable claim. *Hyung Seok Koh*, 2013 WL 5348326, at *8.[2]

---

[2] Although *Scott* and *Williams* were decided on summary judgment, their rationale also applies to the motion-to-dismiss phase. *See Hyung Seok Koh*, 2013 WL 5348326, at *9 (concluding that "it is likely that the Supreme Court would likewise have considered the video had they heard the case at the motion-to-dismiss stage"). When a "clear and undisputed video record" flatly

The Court therefore takes judicial notice of the body-camera footage captured by officers McDonald and Roman. The plaintiff has not challenged those recordings; to the contrary, his response brief assumes their accuracy as a given and attempts to retrofit his allegations to match. *See* ECF No. 26 at ¶ 5 (backpedaling on the claim that officers approached Johnson with handguns raised). Moreover, the body-camera footage "blatantly contradict[s]" several aspects of the complaint, *Williams*, 809 F.3d at 942, including the allegations that the officers attempted to avoid video recording the encounter, approached Johnson with drawn weapons, and conspired to arrest him without cause. As such, the Court finds it appropriate to consider the video footage when weighing the sufficiency of the pleadings.

The defendants' body-camera footage effectively dooms the plaintiff's claims. To overcome qualified immunity, the plaintiff must establish that officers decided to arrest him without even an *arguable* basis for probable cause. *See Mwangangi*, 48 F.4th at 825. Yet the videos provide ample evidence that Johnson was driving without a valid license immediately prior to his encounter with the defendants—an arrestable offense. While camera angles do not depict the plaintiff's vehicle in motion, the footage nonetheless provides several indisputable indications that Johnson had just been driving, including the fact that he held keys in his hand and repeatedly admitted that he had just come from work. ECF No. 28. That information alone provides sufficient grounds for a reasonable officer to find probable cause to arrest. *See District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (noting that probable cause does not require proof of guilt, only "a probability or substantial chance of criminal activity").

In light of the video footage captured by defendants McDonald's and Roman's body cameras, the Court finds that a reasonable officer in their position would have had a more than sufficient basis to find probable cause to arrest the plaintiff. As such, the plaintiff's claims against defendants McDonald and Roman fail on grounds of qualified immunity. Because a municipality may not be held liable in the absence of a constitutional violation by its employees, *see Proffitt v. Ridgway*, 279 F.3d 503, 507 (7th Cir. 2002), the Court also dismisses all claims against the City of Chicago.[3]

---

contradicts a complaint's factual allegations, courts are not required to turn a blind eye and feign uncertainty in the face of documented fact. *See Luczynski* 2024 WL 3106101, at *2; *see also*, *e.g.*, *Mayfield v. City of Mesa,* —F.4th—, 2025 WL 890507, at *2 (9th Cir. Mar. 24, 2025) (considering undisputed video footage in affirming grant of motion to dismiss); *Doriety for Estate of Crenshaw v. Sletten,* 109 F.4th 670, 679-80 (4th Cir. 2024) (holding, "in agreement with our sister circuits . . . that a district court can consider a video submitted at the motion to dismiss stage when (1) the video is 'integral' to the complaint and its authenticity is not challenged, but (2) only to the extent that the video 'clearly depicts a set of facts contrary to those alleged in the complaint,' or 'blatantly contradicts' the plaintiff's allegations, rendering the plaintiff's allegations implausible" (quoting *Saalim v. Walmart, Inc.*, 97 F.4th 995, 1002 (6th Cir. 2024))).

[3] In light of this disposition, the Court need not address the defendants' alternative grounds for dismissal, including the timeliness of the plaintiff's malicious-prosecution claim, whether the plaintiff has pleaded a favorable termination of legal proceedings, and whether the complaint

      The motion to dismiss the plaintiff's complaint for failure to state a claim is granted.

Dated: March 31, 2025

John J. Tharp, Jr.
United States District Judge

---

asserts the factual predicates of a conspiracy claim. Given its dismissal of the complaint, the Court also finds it unnecessary to assess whether the purportedly falsified information in the plaintiff's two in forma pauperis petitions warrant dismissal under 28 U.S.C. § 1915(e)(2)(A). *See* ECF No. 43.